UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**FRANKFORT**

| | |
|---|---|
| TRITENT INTERNATIONAL CORP.; DWI, LLC; and CIBAHIA TABACOS ESPECIAS LTDA, | ) ) ) ) |
| Plaintiffs, | ) Civil Action No. 3:04-67-JMH ) ) |
| v. | ) **MEMORANDUM OPINION AND ORDER** ) ) |
| COMMONWEALTH OF KENTUCKY, | ) ) |
| Defendant. | ) |

\*\*   \*\*   \*\*   \*\*   \*\*

This matter is before the Court on Plaintiffs' motion for reconsideration of the Court's order and judgment of September 8, 2005 [Record No. 81]. Defendant filed a response [Record No. 82], to which Plaintiffs replied [Record Nos. 84]. This matter is now ripe for review.

On September 8, 2005, the Court granted Defendant's motion to dismiss, finding that the statutes enacted by Kentucky to enforce the Master Settlement Agreement ("MSA") in the multistate tobacco litigation were not preempted by the Sherman Act. Plaintiffs raise several arguments in the instant motion, but none are ultimately persuasive.[1]

**STANDARD FOR RELIEF**

This Court interprets a motion for reconsideration as a motion to alter or amend a judgment under Federal Rule of Civil Procedure

---

[1] The factual and procedural background of this case are summarized in the Court's memorandum opinion and order of September 8, 2005 [Record No. 78].

59(e). *See Helton v. ACS Group*, 964 F. Supp. 1175, 1182 (E.D. Tenn. 1997) (citing *Smith v. Hudson*, 600 F.2d 60, 62-63 (6th Cir. 1979)). Such a motion should be granted only where "there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice." *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999) (internal citations omitted). A motion for reconsideration does not serve as "an opportunity to re-argue a case." *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998). Accordingly, a party should not use the motion "to raise arguments which could, and should, have been made before judgment issued." *Id.* (quoting *FDIC v. World Univ. Inc.*, 978 F.2d 10, 16 (1st Cir. 1992)).

## DISCUSSION

Plaintiffs make no claim that there is newly discovered evidence or an intervening change in controlling law, nor do Plaintiffs argue that reconsideration is necessary to avoid manifest injustice. Plaintiffs instead assert that the Court made clear errors of law in dismissing their complaint.

### I. Plaintiffs' State Action Immunity Arguments

Several of Plaintiffs' arguments are puzzling in light of the Court's prior ruling, which was based on a finding that the statutes were not preempted by the Sherman Act. First, Plaintiffs seem to believe that the Court misapplied the "active supervision"

2

prong for state action immunity articulated in *California Retail Liquor Dealers Association v. Midcal Aluminum, Inc.*, 445 U.S. 97, 105 (1980) (describing the two-part test for state action immunity). However, the Court's opinion explicitly stated that it did not need to reach the *Midcal* test because the statutes were not preempted in the first place. The Court made no finding on the *Midcal* issue in its prior ruling.

Second, Plaintiffs claim that the Court broadened the state action immunity doctrine first articulated in *Parker v. Brown*, 317 U.S. 341 (1943), into "interstate action immunity." The Court did not base its decision on the state action immunity doctrine, and therefore certainly did not expand the doctrine.[2]

Third, Plaintiffs take issue with the Court's discussion of the conspiracy exception to state action immunity. In its opinion dismissing the complaint, the Court noted in passing in a footnote that Plaintiffs' allegations regarding the existence of a

---

[2] In responding to the motion to dismiss, Plaintiffs did not raise what they call this "threshold issue" whether there is such a doctrine as "interstate action immunity," and they claim that they did not do so because they assumed that the Court would not create such a doctrine. Even ignoring for the moment Plaintiffs' mischaracterization of the Court's opinion, the fact that Plaintiffs cite no case law in support of this argument except some out-of-context quotations from *Parker*, and the fact that the Court did not rely on *Parker* immunity in reaching its decision, a party should not use a motion for reconsideration "to raise arguments which could, and should, have been made before judgment issued." *Sault Ste. Marie Tribe*, 146 F.3d at 374. Therefore, the Court need not further address the "interstate action immunity" argument of Plaintiffs.

conspiracy were immaterial, as the Supreme Court and Sixth Circuit have both rejected the argument that there is a conspiracy exception to state action immunity. Plaintiffs call the Court's statement of this law "correct," but they claim that it is inapplicable because the state is acting in a commercial (*i.e.* nongovernmental) capacity in enacting and enforcing its tobacco legislation.[3] Again, although the Court referred to state action immunity in passing to explain why the conspiracy allegations were immaterial, the Court did not base its decision on state action immunity, but rather on the grounds that the statutes were not

---

[3] Even if the resolution of the conspiracy exception had been material to the earlier decision, the Court cannot agree with Plaintiffs' characterizations of the cases cited in the section of their motion devoted to conspiracy. Plaintiffs cite *City of Columbia v. Outdoor Advertising, Inc.*, 499 U.S. 365, 374-75 (1991), for the proposition that the rules are different when the state acts as a commercial participant, and *City of Columbia* does indeed explain that language from prior opinions had been read by some to imply that there might be a conspiracy exception when the state acts in nongovernmental areas. However, Plaintiffs ignore the section immediately thereafter, in which the Court rejected the proposition that a government forfeits its antitrust immunity when it regulates as part of a conspiracy with private parties. *See id*. at 375. Even if there was a conspiracy with participating manufacturers, Kentucky's actions in passing and enforcing legislation regulating tobacco companies are protected. Plaintiffs also cite the Third Circuit's opinion in *Ticor Title Insurance Co. v. FTC*, 998 F.2d 1129 (3d Cir. 1993), to suggest that a state engaging in commercial activity can be held liable under a conspiracy exception to state action immunity. However, the section cited by Plaintiffs is directed at *private, nongovernmental* defendants who were arguing that they should be entitled to *Noerr-Pennington* immunity, not state action immunity. *See id.* at 1138.

preempted.[4]

To the extent that Plaintiffs seem resistant to the idea that the state action immunity and preemption analyses are separate inquiries, the Court notes that even the Second Circuit's decision in *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205 (2d Cir.), *reh'g denied* 363 F.3d 149 (2d Cir. 2004), which Plaintiffs regard as the gold standard of MSA-related antitrust decisions,[5] recognized that the *Midcal* state action immunity factors do not come into play until a finding has first been made that a statute is *prima facie* preempted. "Whether a state statute that restrains competition among private firms is preempted by the Sherman Act is determined by a two-step analysis." *Id.* at 222. First, a court must

---

[4] Plaintiffs have directed the Court to no cases suggesting that the participation of the state in a "conspiracy," even if accepted as true for purposes of the motion, would affect the outcome of the preemption analysis under *Rice*.

[5] Plaintiffs also repeatedly rely in this and other filings on what they describe as the "unequivocal ruling" in *A.D. Bedell Wholesale Co. v. Philip Morris Inc.*, 263 F.3d 239 (3d Cir. 2001). It strikes the Court as odd that a decision dismissing a similar Sherman Act attack on state statutes would be cited as "unequivocal" support for *not* dismissing such an attack. It is true that after the Third Circuit dismissed the challenge to the statutes under *Noerr-Pennington*, it added a section suggesting that state action immunity would not have applied were it not dismissing the suit on other grounds. *See id.* at 257-264. However, in a subsequent challenge to the statutes that was more similar to the instant case than *Bedell*, the Third Circuit again dismissed the suit under *Noerr-Pennington* and went on to cast considerable doubt on the logic of *Bedell*, suggesting that the court in *Bedell* had "unintentionally" found the absence of state action immunity for the state, although the court declined to actually overrule the prior opinion. *See Mariana v. Fisher*, 338 F.3d 189, 203 (3d Cir. 2003).

determine whether the statute "mandates or authorizes conduct that necessarily constitutes a violation of the antitrust laws in all cases, or if it places irresistible pressure on a private party to violate the antitrust laws in order to comply with the statute." *Id.* (quoting *Rice v. Norman Williams Co.*, 458 U.S. 654, 661 (1982)). Second, according to the Second Circuit and most other courts, the *Parker/Midcal* state action immunity doctrine is applied *only after* a statute has been shown to be preempted.[6] *See id.* at 223, 226; *see also Rice*, 458 U.S. at 661 n.9 (finding it unnecessary to engage in the immunity analysis after holding that the state statute at issue was not preempted).

This Court chose not to follow the Second Circuit's decision in *Freedom Holdings* not because it differed in the application of *Midcal* and other state action immunity cases, but rather because the Court found the Second Circuit's reasoning on preemption unpersuasive and inconsistent with analogous Sixth Circuit law. Therefore, the Court did not reach state action immunity, and

---

[6] As the Court noted in its prior ruling, there are cases in which courts have gone straight to the *Midcal* analysis without discussing preemption first, but in all of these cases the statutes *explicitly* authorized or mandated conduct that was in all cases illegal. The absence of a discussion of the *Rice* preemption standard in these cases does not indicate that *Rice* is inapplicable, but rather simply that when the statutes explicitly require that private parties engage in resale price maintenance or price-fixing, there is no need to elaborate on whether there is a conflict between state and federal law. *See, e.g.*, *324 Liquor Corp. v. Duffy*, 479 U.S. 335(1987); *Schwegmann Bros. v. Calvert Distillers Corp.*, 341 U.S. 384, 386-87 (1951).

Plaintiffs' arguments on state action immunity are not sufficient for the Court to find that it made a clear error of law.

## II. Authorization of Illegal Conduct

In its earlier opinion the Court held that because the challenged statutes neither mandate nor explicitly authorize conduct on the part of participating manufacturers that is illegal *per se*, the standard for preemption under *Rice* was not met. Plaintiffs still do not claim that the statutes mandate illegal conduct, but they do take issue with the Court's determination that the statutes do not authorize illegal conduct.

The Court determined, based largely on the Sixth Circuit's opinion in *McNeilus Truck and Manufacturing, Inc. v. Ohio ex rel Montgomery*, 226 F.3d 429 (6th Cir. 2000), that it is not enough for a statute to facilitate conduct that is illegal *per se*, but rather that a statute must explicitly authorize the illegal conduct to be preempted under *Rice*. Plaintiffs argue that the authorization need not be explicit for the statute to be preempted.

In *McNeilus*, the Sixth Circuit affirmed a district court's summary judgment dismissing a Sherman Act claim against the state of Ohio. The plaintiffs in that case argued that a statute requiring licensing of car dealers authorized a boycott against a certain class of dealers, which would have been illegal *per se* under the Sherman Act. The Sixth Circuit rejected this contention, stating that "the statute does not *explicitly* authorize a boycott.

7

Nor is the state's passing of the statute the kind of behavior to which the boycott cases speak." *Id.* at 441 (emphasis added). Although the Sixth Circuit felt that "the statute may well have anticompetitive effects" since it "no doubt facilitates either coordinated action, if such there be, or else uncoordinated (though perhaps conscious) parallel action," the court refused to find Sherman Act preemption because "the statute neither authorizes nor requires that dealers engage in behavior proscribed by the federal antitrust laws." *Id.*

The challenged Kentucky statutes in this case no more authorize illegal conduct than the challenged Ohio statutes in *McNeilus*. Plaintiffs point to nothing in the statutory text that constitutes authorization, but instead rely on claims about the state's subjective intentions in enacting the statutes, which are irrelevant to the analysis. *See Consol. Television Cable Serv., Inc. v. City of Frankfort*, 857 F.2d 354, 362 (6th Cir. 1988). If, as Plaintiffs argue, explicit statutory authorization of illegal conduct is not necessary to meet *Rice*, then implicit authorization must be sufficient. However, Plaintiffs cite no cases in which a court has held that a statute *implicitly* authorized conduct that was illegal *per se* and therefore was preempted. A finding of implicit authorization would appear to require no more than a showing that a statute facilitated the anticompetitive conduct, a showing that has repeatedly been held insufficient to hold a state

8

statute preempted.  *See, e.g.*, *Exxon Corp. v. Governor of Maryland*, 437 U.S. 117, 133 (1978).

### III. The Absence of a Clear Error of Law

Plaintiffs' arguments are unpersuasive, and even if they were accepted they would at best demonstrate that courts could go both ways.  Outside of the Second Circuit, several courts have rejected antitrust challenges to similar statutes in other states.[7]  *See, e.g.*, *Sanders v. Lockyer*, 365 F. Supp. 2d 1093 (N.D. Cal. 2005) (dismissing a challenge to California's statutes relating to NPMs); *Xcaliber v. Edmondson*, No. 04-CV-0922-CVE-PJC (N.D. Ok. May 20, 2005) (granting summary judgment in favor of the Attorney General of Oklahoma and holding that the Oklahoma version of the ASR Repealer "cannot be said to enforce any market-sharing or price-fixing agreement among manufacturers, or any other private decision to restrain competition").  In the only other decision within this circuit that the Court is aware of, the District Court for the Middle District of Tennessee dismissed a Sherman Act challenge to the equivalent Tennessee statutes.  *See S & M Brands, Inc. v. Summers*, No. 3:05-0171 (M.D. Tenn. Oct. 6, 2005).  The weight of

---

[7] In addition to cases within the Second Circuit, Plaintiffs cite *Xcaliber Int'l Ltd. v. Kline*, No. 05-2261 (D. Kan. July 29, 2005), in which the District Court of Kansas orally denied a motion to dismiss from the bench.  The Court is not aware of any written opinion in that case, and even if its logic were persuasive, it would not lead to a finding of a clear error of law, but rather it would merely be one more demonstration that courts have gone both ways on these issues.

authority outside of the Second Circuit is on the side of Defendant in this case, and therefore the Court does not find that it has made a clear error of law.

### CONCLUSION

Accordingly, and for the foregoing reasons, **IT IS ORDERED** that Plaintiffs' motion for reconsideration [Record No. 81] be, and the same hereby is, **DENIED.**

This the 24th day of October, 2005.



Signed By:
*Joseph M. Hood*
United States District Judge